# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JONATHAN SWARTZ, et al., | |
| Plaintiffs, | |
| v. | Case No. 12-cv-01029-DDC-KGG |
| D-J ENGINEERING, INC., and REZAUL CHOWDHURY, | |
| Defendants. | |

## MEMORANDUM AND ORDER

Plaintiffs filed this lawsuit under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, alleging that defendants D-J Engineering, Inc. ("DJE") and its Chief Executive Officer, Rezaul Chowdhury, improperly classified them as salaried employees exempt from the FLSA's overtime-pay requirements. The parties have notified the Court that they have settled this case. This matter thus comes before the Court on the parties' Joint Motion for Approval of FLSA Collective Action Settlement (Doc. 129), plaintiffs' Motion for Approval of Attorneys' Fees and Reimbursement of Costs (Doc. 131), and plaintiffs' Motion to Supplement (Doc. 134), which they filed in response to the Court's Order requesting more information about settlement allocations. *See* Doc. 133. For the reasons explained below, the Court grants the motions.

### I.     Factual Background

On January 17, 2012, plaintiff Jonathan Swartz filed a FLSA claim against defendants on behalf of himself and all similarly situated current and former employees. *See* Doc. 1 at 1–2. He sought back pay, damages, and attorneys' fees as relief for an alleged FLSA misclassification and failure to pay overtime. *Id.* at 3–4. On September 24, 2013, the Court conditionally certified

plaintiff's claims as a collective action under 29 U.S.C. § 216(b) for two classes of persons: (1) all employees whom defendants deemed exempt as administrative, executive, or professional employees, who had worked more than forty hours in any workweek and who had worked at DJE at any time from January 19, 2010, through January 21, 2013 (the "Deduction Class"); and (2) all engineers who had worked in the Engineering Department whom defendants deemed to be exempt professional employees, who had worked more than forty hours in any workweek between January 19, 2010, and January 21, 2013 (the "Engineer Class"). Doc. 45; *see also* Doc. 122 at 2 (summarizing the conditionally certified classes before addressing defendants' Motion to Decertify). Mr. Swartz was designated as class representative and seven additional individuals opted into the collective action. *See* Docs. 48, 50, 51.

After a lengthy discovery period, defendants moved to decertify both classes and for summary judgment. *See* Docs. 82, 84. The Court granted in part and denied in part each motion. *See* Doc. 122. The Court decertified the Engineer Class because the two individuals in the class were not similarly situated employees. Doc. 122 at 19–20. The Court dismissed the Engineer Class opt-in plaintiff's claim without prejudice, leaving only Mr. Swartz's individual engineer misclassification claim as part of this case. *Id.* at 20. The Court determined, however, that it could "resolve the Deduction Class' claims efficiently as a collective action." Doc. 122 at 17. The Court thus denied defendants' motion to decertify the Deduction Class. *Id.* The Court next addressed defendants' arguments for summary judgment on the claims asserted by both classes. It determined that summary judgment was not appropriate for the Deduction Class' claims. *Id.* at 22–32. But the Court granted summary judgment for defendants on Mr. Swartz's engineer misclassification claim. *Id.* at 32–36.

When the parties notified the Court that they had reached a settlement agreement, the Court vacated the trial schedule. It also directed the parties to file a motion for approval of the proposed settlement. The parties filed their motion for approval on September 27, 2015. But the Court determined it did not have enough information to approve the settlement. *See* Doc. 133. As the Court requested, plaintiffs provided additional information about how unliquidated damages were estimated. *See* Doc. 134. The Court now can address the parties' Joint Motion for Approval of FLSA Collective Action Settlement (Doc. 129)—including plaintiffs' supplemental materials filed as a motion (Doc. 134)—and plaintiffs' Motion for Approval of Attorneys' Fees and Reimbursement of Costs (Doc. 131). The parties provided the Court with memorandums in support (Docs. 130, 132), the actual Settlement Agreement and Release (the "Settlement Agreement") (Doc. 130–2), the Agreement and Releases executed by each plaintiff (the "Releases") (Doc. 130–3), and the Distribution to Plaintiffs of Net Settlement Proceeds (Doc. 130–4).

According to the proposed settlement, defendants will pay a total gross settlement amount of $100,000 that will be distributed as follows:

1. $7,500 to the attorneys to reimburse costs (actual costs were $9,580.01)

2. $18,500[1] to the attorneys as a 20% net contingency fee (reduced from an original one-third contingency fee agreement)

3. $74,000 to the plaintiffs, as set forth below:

    a. David Hall    $10,591

    b. Saeed Mansouri    $6,568

    c. Vien Nguyen    $2,291

    d. David McDonald    $10,610

---

[1] The $18,500 contingency fee represents 20 percent of the settlement amount after subtracting the $7,500 in attorney costs (($100,000 – $7,500) x .2 = $18,500).

  e. Claude Riggins  $10,610

  f. Mike Clift  $10,610

  g. Jonathan Swartz  $11,610

  h. Ramin Ranjbar  $11,110

In exchange for the settlement amount, plaintiffs agree to release defendants from all claims they have or might have "that are based upon claims for unpaid minimum wages, overtime, improper deductions, and other wage-related claims that otherwise relate" to this lawsuit. Doc. 130–2 at 11–12.

  The Settlement Agreement gave plaintiffs and their counsel discretion to determine how to allocate the $74,000 net settlement amount, and their chosen distribution allocations above were attached to the Settlement Agreement. Doc. 130–2 at 9; Doc. 130–4. The memorandum in support of the motion for settlement approval explains that, if approved, $72,500 will be distributed based on a per capita share, capped at the estimated amount of unliquidated damages for each individual. *See* Doc. 130 at 7–8. The remaining $1,500 is allocated between two plaintiffs as enhancements. Mr. Swartz's payment amount includes a $1,000 enhancement for initiating the litigation, representing the class, attending two mediation sessions, and working closely with the attorneys throughout the lawsuit. Mr. Ranjbar's payment amount includes a $500 enhancement because he had to pay to travel from California to Kansas for his deposition. The other seven plaintiffs' depositions did not require travel.

  To distribute the $72,500 fairly, plaintiffs' counsel estimated the actual unliquidated damages for each plaintiff by reviewing payroll and absences/vacation request forms. *See id.* at 7; Doc. 134 at 2. Counsel considered a number of factors to determine unliquidated damages, specifically:

when the plaintiff worked for the [d]efendants; the portion of that time that was within the three-year notice period and a shorter two-year period if the [d]efendants' alleged violations were not willful; the number of weeks that each plaintiff worked more than 40 hours; the number of hours over 40 for each of those weeks and those where they worked more than 50 hours; the amount of the plaintiff's salary; the number of deductions, if any, that the plaintiff experienced and when those deductions, if any, occurred; and the reason for the deduction, if any.

Doc. 134 at 2. For all eight plaintiffs the estimated gross unliquidated damages were $156,634, which, after attorneys' fees and costs, left net unliquidated damages of $119,307.[2] Plaintiffs reported that unanimously they chose to distribute the $72,500 "on a modified per capita approach where the individual plaintiff's share would be capped by the amount that plaintiff would have gotten from a net settlement of $119,307." *Id.* at 4. Mr. Hall, Mr. Mansouri, and Mr. Nguyen's amounts are based on the maximum unliquidated damages that they could have received at trial. Doc. 130 at 10. The remaining five plaintiffs' amounts are lower than the actual unliquidated damages that they might have received at trial, based on a per capita distribution. *Id.*

Plaintiffs helped create this distribution method and their counsel reports that all plaintiffs support it. Doc. 130 at 8. Plaintiffs also approve of the amounts to be paid to their attorneys for reimbursement of costs and fees. Doc. 130 at 9–10. All parties have agreed to the terms of the proposed Settlement Agreement, and, for reasons below, the Court approves the settlement and the request for attorneys' fees and costs as fair and reasonable.

## II. Motion for Approval of FLSA Collective Action Settlement

In the parties' motion for settlement approval they make two requests. First, they ask the Court to make a final collective action ruling. And, second, the parties ask the Court to approve their Settlement Agreement.

---

[2] The $119,307 represents the estimated amount of unliquidated damages left for plaintiffs after subtracting costs, then subtracting a 20 percent contingency fee (($156,634 - $7,500 costs) x .80 = $119,307).

5

### A. Final Collective Action Certification for the Deduction Class

"[W]hen parties settle FLSA claims before the Court has made a final certification ruling, the Court must make some final class certification before it can approve a collective action settlement." *Gambrell v. Weber Carpet, Inc.*, No. 10-2131-KHV, 2012 WL 5306273, at *3 (D. Kan. Oct. 29, 2012). In their motion, the parties "request that the Court finally certify a collective action with respect to the class of certain exempt employees who worked at [DJE]'s Augusta, Kansas facility from January 19, 2010 through January 21, 2013." Doc. 129 at 1. The Court conditionally certified this Deduction Class on September 24, 2013. Doc. 45 at 16; Doc. 122 at 2. And, on July 9, 2015, the Court denied defendants' motion to decertify the Deduction Class. Doc. 122 at 17, 37. But the parties are uncertain whether that denial implicitly granted final certification of the Deduction Class. The parties thus request final collective action certification for the Deduction Class now.

"In making a final collective action determination, the Court considers several factors including (1) the disparate factual and employment settings of individual plaintiffs; (2) various defenses available to defendant[s] which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Gambrell*, 2012 WL 5306273, at * 3 (citing *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102–03 (10th Cir. 2001)). If, after considering these factors, the Court finds that plaintiffs are similarly situated, it finally certifies the collective action and allows the class to proceed to trial. *See Green v. Harbor Freight Tools USA, Inc.*, 888 F. Supp. 2d 1088, 1094 (D. Kan. 2012). The Court already has considered the *Thiessen* factors in its Order denying decertification of the Deduction Class. *See* Doc. 122 at 11–17. First, the Court found that because "plaintiffs assert a single statutory violation that applies to all of the applicable exemptions, [the] differing job classifications [among plaintiffs] do not defeat their

status as similarly situated plaintiffs." *Id.* at 14. Second, the Court determined that individualized defenses also do not defeat plaintiffs' status as similarly situated plaintiffs. *Id.* at 14–16. Third, the Court found that fairness and procedural considerations weigh in favor of certification. *Id.* at 16–17. The Court concluded that "each of the three *Thiessen* factors favors allowing the Deduction Class' claims to proceed as a collective action." *Id.* at 17. To clarify its previous Order, the Court now expressly certifies a final collective action consisting of the Deduction Class.

### B. Approval of Settlement

The parties next move the Court to approve the proposed Settlement Agreement (Doc. 130–1). "A settlement of claims under the FLSA must be presented to the Court for review and determination whether the settlement is fair and reasonable." *Tommey v. Computer Scis. Corp.*, No. 11-cv-02214-EFM, 2015 WL 1623025, at *1 (D. Kan. Apr. 13, 2015); *see also Gambrell*, 2012 WL 5306273, at * 2 (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982)) ("When employees file suit against their employer to recover back wages under the FLSA, the parties must present any proposed settlement to the district court for review and a determination whether the settlement is fair and reasonable."). To approve a FLSA settlement, the Court must determine whether: (1) the litigation involves a bonda fide dispute, (2) the proposed settlement is fair and equitable to all parties, and (3) any enhancement payments are fair and reasonable. *Tommey*, 2015 WL 1623025, at *2; *see also Barbosa v. Nat'l Beef Packing Co.*, No. 12-2311-KHV, 2015 WL 4920292, at *3 (D. Kan. Aug. 18, 2015). The Court addresses each consideration below.

### 1. Bona Fide Dispute

To determine whether a bona fide dispute exists, the parties must provide the Court with: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each parties estimate of the number of hours worked, and the applicable wage. *McCaffrey v. Mortg. Sources Corp.*, No. 08-2660-KHV, 2011 WL 32436, at *4 (D. Kan. Jan. 5, 2011). The Court considered this information in its Order conditionally certifying the class, and in more detail in its Order addressing defendants' decertification and summary judgment motions. *See* Docs. 45, 122.

The parties assert that a bona fide dispute exists because, when Mr. Swartz filed his Complaint against defendants, defendants denied all material facts and any violation of the FLSA in their Answer. The parties also "vigorously argued their respective positions throughout the litigation," conducted extensive discovery, and deposed all plaintiffs and key defense witnesses. Doc. 130 at 8. When defendants filed for summary judgment, the Court granted the motion for the Engineer Class but denied it for the Deduction Class. And, defendants continue to deny any FLSA violation. The Court agrees with the parties. In its Order denying in part summary judgment, this Court determined that genuine issues exist, including "whether defendants maintained an actual practice of improper salary deductions" violating plaintiffs' rights to overtime pay under the FLSA. Doc. 122 at 31. The Court thus concludes that the litigation involves a bona fide dispute over FLSA provisions, with the potential for either side to prevail if litigation were to continue.

## 2. Fairness and Equitable Settlement

"To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales." *Solis v. Top Brass, Inc.*, No. 14-cv-00219-KMT, 2014 WL 4357486, at *3 (D. Colo. Sept. 3, 2014). To determine if the proposed settlement is fair and equitable, the Court considers: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Barbosa v. Nat'l Beef Packing Co.*, No. 12-2311-KHV, 2014 WL 5099423, at *7 (D. Kan. Oct. 10, 2014); *Tommey*, 2015 WL 1623025, at *2. "If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation." *Gambrell*, 2012 WL 5306273, at * 2 (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1354).

The parties assert that the settlement is fair and equitable. The Court agrees. All the factors favor approval. First, the Court has no reason to doubt that the proposed settlement was fairly and honestly negotiated. The parties are represented by experienced attorneys and reached a settlement only after extensive discovery, research, and arms-length negotiations. The parties participated in two mediation sessions, one before and one after the Court's summary judgement decision. Mr. Swartz participated in the mediation process on behalf of all plaintiffs and helped determine the framework for the settlement, including attorneys' fees, reimbursement of costs, and how to distribute plaintiffs' portion of the settlement amount. And, plaintiffs unanimously

approved the proposed settlement distributions, which are based on the unliquidated damages that they might have collected at trial.

Second, as discussed in the Court's summary judgment order, it appears that the case involves serious questions of law and fact which place the ultimate outcome of the litigation in doubt. Namely, it is uncertain whether plaintiffs can establish that DJE engaged in an actual practice of improper salary deductions in violation of the FLSA's salary basis requirement for exemptions. Defendants continue to deny any improper deductions. And plaintiffs' recovery at trial, if any, would depend on the proof of improper deductions and a number of related (but unknown) questions, including: (1) whether certain holiday deductions were improper; (2) whether employees who did not experience salary deductions are entitled to overtime; and (3) whether the FLSA violations were willful. *See* Doc. 122 at 24–32 (discussing various legal and factual unknowns in denying summary judgment).

Third, it appears that the value of immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. Plaintiffs estimated that they might have won $156,634 in unliquidated damages at trial. And if defendants' good faith defense failed, plaintiffs might have recovered over $300,000 because they also would be entitled to liquidated damages. The outcome of any trial, however, is uncertain. Plaintiffs might have recovered nothing. The parties assert that they still would have to expend substantial resources preparing for and participating in a trial that they estimate to consume seven days. The additional risk, time, and expense of trial are outweighed by the immediate recovery of $100,000, as provided for in the proposed settlement. While plaintiffs will receive less than the estimated damages they might have received after a trial, the settlement removes the risks of litigation. The Court finds this factor favors approval.

Fourth, the parties agree that the settlement is fair and reasonable. All parties approved the settlement, and all plaintiffs agreed to the distribution method, reimbursement of costs, and attorneys' fees. Each plaintiff also has signed an Agreement and Release confirming that he has reviewed the Settlement Agreement with counsel and approves of it. The Court has reviewed the Settlement Agreement and the Releases and agrees that they are fair and reasonable. The proposed settlement will pay each member on a per capita basis tied to the estimated unliquidated damages that each plaintiff sustained, and equitably allocates the funds among the class members. Plaintiffs' counsel represent that the unliquidated damage estimates were determined from payroll and absences/vacation request forms that span the notice period, taking into account hours worked, salaries, and deductions. In addition, the releases of claims in the Settlement Agreement and the individual Releases are limited to wage-related claims arising out of the facts alleged in this suit.

Based on these factors, the Court finds that the proposed settlement is fair and equitable.

### 3. **Proposed Enhancements**

The Court also must examine any enhancement payments to determine whether they are fair and reasonable. *See Tommey*, 2015 WL 1623025, at *2; *Grove v. ZW Tech, Inc.*, No. 11-2445-KHV, 2012 WL 1789100, at *7 (D. Kan. May 17, 2012). The Settlement Agreement here provides that Mr. Swartz will receive a $1,000 enhancement. The parties explain that this enhancement is for initiating the litigation, representing the class, attending two mediation sessions, aiding "in interpreting some of the 10,000+ pages of documents" produced by defendants, and working closely with the attorneys throughout the lawsuit. Doc. 130 at 7. In light of his increased involvement compared to the other plaintiffs, the Court finds Mr. Swartz's enhancement is fair and reasonable. *See Torkelson v. Jimick Products, Inc.*, No. 12-1052-EFM,

2012 WL 6623911, at *1 (D. Kan. Dec. 19, 2012) (discussing Court's approval of a $56,500 settlement and a $2,000 enhancement to named plaintiff); *Shockey v. Huhtamaki, Inc.*, No. 09-cv-2260-JAR-DJW, 2012 WL 3562136, at *2 (finding $1,000 enhancement payment to class representative reasonable where collectively the plaintiffs received $42,506.84). The Court also finds the $500 enhancement to Mr. Ranjbar to offset his travel expenses is fair and reasonable.

The Court finds that the litigation involves a bona fide dispute, the proposed settlement is fair and equitable to all parties, and the enhancement payments are fair and reasonable. The Court thus approves the proposed FLSA Settlement Agreement.

### III. Motion for Approval of Attorneys' Fees and Reimbursement of Costs

Plaintiffs move the Court to approve their attorneys' fees and costs incurred during this matter. *See* Doc. 131. "[T]he FLSA entitles prevailing plaintiffs to recover 'a reasonable attorney's fee . . . and costs of the action.'" *Gambrell*, 2012 WL 5306273, at * 3 (quoting 29 U.S.C. § 216(b)). And FLSA settlement agreements must include an award of reasonable attorneys' fees and costs. *See Barbosa*, 2014 WL 5099423, at *5; *Hobbs v. Tandem Envtl. Sols., Inc.*, No. 10-1204-KHV, 2012 WL 4747166, at *3 (D. Kan. Oct. 4, 2012). While an award of attorneys' fees is mandatory, courts have discretion to determine the amount and reasonableness of the fee. *Gambrell*, 2012 WL 5306273, at * 3. Here, plaintiffs ask the Court to approve $26,000 in attorneys' fees and costs—$18,500 for fees and $7,500 for costs.

#### A. Attorneys' Fees

The attorneys' fee proposed here is 20 percent of the settlement fund, after subtracting litigation costs. A percentage fee from a common fund award "must be reasonable and . . . the district court must articulate specific reasons for fee awards demonstrating the reasonableness of the percentage and thus the reasonableness of the fee award." *Barbosa v. Nat'l Beef Packing*

*Co.*, 2015 WL 4920292, at *7. To determine the fee award's reasonableness, "[t]he Tenth Circuit applies a hybrid approach, which combines the percentage fee method with the specific factors traditionally used to calculate the lodestar." *Id.* (citing *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995); *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994)). This method calls for the courts to calculate a lodestar amount, "which represents the number of hours reasonably expended multiplied by a reasonable hourly rate." *Solis*, 2014 WL 4357486, at * 4 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (further citation omitted)); *see also Hobbs*, 2012 WL 4747166, at *3. The method also considers the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), which are: (1) time and labor required; (2) novelty and difficulty of the questions presented in the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Gambrell v. Weber Carpet, Inc.*, No. 10-2131-KHV, 2013 WL 1659591, at *1 (D. Kan. Apr. 17, 2013) (citing *Johnson*, 488 F.2d at 717–19); *see also Fulton v. TLC Lawn Care, Inc.*, No 10-2645-KHV, 2012 WL 1788140, at *5 (D. Kan. May 17, 2012) (citing *Rosenbaum*, 64 F.3d at 1445).

Here, defendants will pay $18,500 in attorneys' fees under the proposed Settlement Agreement. Originally, plaintiffs pursued this suit under a one-third contingency fee agreement with their counsel. But plaintiffs' counsel later agreed to reduce the fee to 20 percent of the net

13

settlement amount, ultimately reducing their fee request from $30,833.33[3] to $18,500. To support their agreed attorney fees, counsel submitted Declarations showing that Mr. Schultz spent a minimum of 250 hours, Mr. Kaup spent a minimum of 190 hours, and Mr. Michel spent a minimum of 75 hours working on this case. *See* Doc. 132–2. Before settlement, counsel conducted extensive discovery, multiple depositions, and significant legal research; moved to conditionally certify the class action; responded to defendants' motions to decertify and for summary judgment; and participated in two mediation sessions. All three counsel are experienced in labor and employment law matters. Mr. Shultz has 31 years, Mr. Kaup 34 years, and Mr. Michel 20 years' experience handling employment law issues. *See* Doc. 132–2. Despite this experience, they could not provide a typical hourly fee they charge for employment cases because they take employment cases on a contingent fee basis. Thus, instead of analyzing the reasonableness of the customary hourly rates, the Court itself will determine a reasonable rate, *i.e.* "the prevailing market rate in the relevant community for an attorney of similar experience," to determine a lodestar amount. *Solis,* 2014 WL 4357486, at *4; *see also Barbosa*, 2015 WL 4920292, at *9 ("[T]he Court fixes the reasonable hourly rate . . . and does so by examining evidence which shows what the market commands for analogous litigation."). In a recent case, the Court found hourly rates ranging from $180 to $425 reasonable, depending on each counsel's level of experience. *See Barbosa*, 2015 WL 4920292, at *10. Here, all counsel are experienced in employment law cases. And the Court finds that an hourly rate of $250 is reasonable for attorneys of their experience.

---

[3] Had counsel kept the one-third contingency fee arrangement, the fee request under the proposed settlement would be $30,833.33 (($100,000 – $7,500) x (1/3) = $30,833.33).

14

Applying this rate to counsels' asserted minimum hours, the lodestar is $128,750[4]—an amount significantly higher than the $18,500 requested. Thus, the attorneys' fees requested are reasonable under the lodestar method. Even if the Court applied a lower hourly rate and reduced some of counsels' hours as unreasonable, the attorneys' fees requested would still be reasonable under the lodestar method. The Court thus concludes that the lodestar method, the time and labor required for the case, and the experience, reputation, and ability of the attorneys support the reasonableness of the fees requested.

Next, the Court considers the remaining *Johnson* factors. Plaintiffs claim the legal issues in this case were more difficult than originally anticipated. In particular, plaintiffs assert that the 2004 revisions to the FLSA Regulations modified the salary-basis test for exemption from overtime-pay requirements and case law guidance was limited about how the revisions affected the law. The Court agrees. The Court addressed some aspects of the revised regulations in its summary judgment order. Because there was no guidance from our Circuit, the Court agreed with the Sixth Circuit's analysis of the revisions. Doc. 122 at 23–24. The Court declined to resolve other unsettled aspects at the summary judgment stage. *Id.* at 32. This case presented uncertain legal issues and difficult factual issues about whether plaintiffs were exempt from overtime-pay requirements. Addressing these issues required skill and expertise. Plaintiffs' counsel are experienced in handling labor and employment cases, and they took this case under the uncertainty of a contingency fee arrangement. These factors support the reasonableness of the fee.

Plaintiffs assert that Mr. Shultz's obligations to this case precluded him from accepting other employment. Specifically, Mr. Shultz stopped taking new clients while he was briefing the

---

[4] To calculate the lodestar the Court multiples the number of hours reasonably expended by the reasonable hourly rate determined. *Solis*, 2014 WL 4357486, at * 4. The Court accepts counsel's represented hours as reasonable for this purpose ((250 + 190 + 75) hours x $250 hourly rate = $128,750).

15

motion to certify the collective action conditionally and while he was responding to defendants' motions for decertification and summary judgment. Mr. Shultz's ability to take on new clients during this time also was affected by his health, however. The fact that this case affected counsel's ability to represent other clients supports a finding that the proposed attorneys' fee is reasonable.

The percentage of the settlement fund allocated to attorneys' fees here appears customary. "To determine whether the negotiated amount of attorney fees is reasonable, the Court must examine whether plaintiffs' counsel are adequately compensated and ensure that a conflict of interest does not taint the amount plaintiffs receive under the agreement." *Valdez v. SE Kan. Indep. Living Res. Ctr., Inc.*, No. 10-1194-KHV/DJW, 2011 WL 1231159, at *3 (D. Kan. Mar. 29, 2011). Counsel assert that their customary contingency fee arrangements in employment cases range from 33 percent to 40 percent when a settlement results pretrial. "This Court has found that fee awards in these types of cases have ranged from four percent to 58 percent of the common fund and resulted in total fee awards ranging from a few thousand dollars to over $5 million." *Peterson v. Mortg. Sources, Corp.*, No. 08-2660-KHV, 2011 WL 3793963, at *12 (D. Kan. Aug. 25, 2011). Recently, our Court found a 33 percent fee "within the customary percentage of the fund approved by this Court." *Barbosa*, 2015 WL 4920292, at *11; *see also Grove*, 2012 WL 48672226, at *5 (finding 25 percent of the common fund to be a reasonable percentage); *Valdez,* 2011 WL 1231159, at *3 (finding attorneys' fees of 28.6 percent of the total settlement amount reasonable). Here, counsel have agreed to take a lower percentage of the total settlement than plaintiffs initially agreed to pay and the record contains no suggestion that counsel have a conflict of interest. The 20 percent contingent fee is within the customary

range approved by the Court and is lower than the customary fee range which counsel charge in similar matters. This supports the reasonableness of the fees request.

There were no time limitations imposed on the litigation, and plaintiffs' counsel had no relationship with plaintiffs prior to this suit. Thus, these factors are neutral.

Plaintiffs and plaintiffs' counsel do not contend the case was undesirable. Through the settlement, plaintiffs' counsel obtained a favorable result for their clients. Recovery at trial might have reached more than $300,000, and the parties settled for $100,000. But defendants continue to deny any FLSA violations and it is uncertain whether plaintiffs would have succeeded on their claim that defendants' violated the salary-basis test. This settlement avoids the uncertainty and rigors of trial.

Finally, plaintiffs provide no evidence about awards in similar cases, asserting that the facts and legal issues vary in every case. As discussed above, the fee percentage is within the range courts approve as reasonable. Indeed, the 20 percent attorneys' fee is on the lower end of fees typically charged in FLSA cases. The Court finds that the attorneys' fees requested here align with fees awarded in other FLSA cases. *See, e.g.*, *Grove*, 2012 WL 4867226, at *5 (finding a 25 percent award reasonable where the case involved ten plaintiffs and a $74,188 settlement fund); *Peterson*, 2011 WL 3793963, at *13 (finding a 30.5 percent award reasonable where the case involved seven plaintiffs and a $85,000 settlement fund).

Based on its analysis of the lodestar and the *Johnson* factors, the Court finds that the attorneys' fees requested are fair and reasonable. The Court thus grants plaintiffs' Motion for Approval of Attorneys' Fees.

### B. Reimbursement of Costs

Plaintiffs' counsel seek $7,500 for reimbursement of costs incurred while litigating this case. Mr. Michel's firm paid for three trips between Salina and Wichita ($416.14), deposition costs ($3,871.35), mediation costs ($1,969.05), and postage ($640.03), totaling $6,896.57. Mr. Kaup incurred travel costs for six trips between Topeka and Wichita ($1,471.09) and photocopying charges ($17.35), totaling $1,488.44. Mr. Shultz incurred filing fee costs ($350) and travel costs for five trips between Shawnee, Kansas and Wichita ($925), totaling $1,275. Total costs incurred for all counsel were $9,660.01.[5] Plaintiffs' counsel, however, has agreed to cap their reimbursement of costs at $7,500. After reviewing these costs, the Court finds that an award of costs in that amount is reasonable. The Court thus approves the $7,500 reimbursement of costs requested.

### IV. Conclusion

For the reasons explained above, the Court grants the Joint Motion for Approval of FLSA Collective Action Settlement (Doc. 129) and plaintiffs' Motion for Approval of Attorneys' Fees and Reimbursement of Costs (Doc. 131). The Court finds that the proposed settlement resolves a bona fide dispute and is fair and equitable to all parties. The Court approves the parties' Settlement Agreement establishing a common fund of $100,000 and awards (1) $7,500 to plaintiffs' counsel for costs; (2) $18,500 to plaintiffs' counsel in attorneys' fees; and (3) $74,000 to plaintiffs, as follows:

    a. David Hall       $10,591

    b. Saeed Mansouri  $6,568

---

[5] Plaintiffs' memorandum provides total costs were $9,580.01, *see* Doc. 132 at 9, but the figures provided in both the memorandum and Declarations from counsel amount to $9,660.01($6,896.57 + $1,488.44 + $1,275 = $9,660.01). The differing amount is likely a clerical error, and, regardless, the difference is irrelevant because costs exceeded the agreed upon cap.

    c. Vien Nguyen     $2,291

    d. David McDonald  $10,610

    e. Claude Riggins   $10,610

    f. Mike Clift      $10,610

    g. Jonathan Swartz  $11,610

    h. Ramin Ranjbar   $11,110

The parties' Settlement Agreement provides that the settlement payments will be mailed within 15 business days after the Court approves the settlement. Doc. 130–2 at 14. And, when the payments have been received, the parties will file a Stipulation of Dismissal with Prejudice. *Id.* The Court thus will await the filing of a stipulated motion to dismiss before entering final dismissal.

**IT IS THEREFORE ORDERED** that the parties' Joint Motion for Approval of FLSA Collective Action Settlement (Doc. 129), plaintiffs' Motion to Supplement (Doc. 134), and plaintiffs' Motion for Approval of Attorneys' Fees and Reimbursement of Costs (Doc. 131) are granted, as set forth above.

**IT IS FURTHER ORDERED** that for settlement purposes, the Court certifies a final collective action under the FLSA for the eight employees in the Deduction Class.

**IT IS FURTHER ORDERED** that, no later than 30 days from the date of this Order, the parties will file a joint stipulated dismissal of this case with prejudice.

**Dated this 17th day of February, 2016, at Topeka, Kansas**

                                      **s/ Daniel D. Crabtree**
                                      **Daniel D. Crabtree**
                                      **United States District Judge**